UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM RANDOLPH POWELL, | No. 1:25-cv-00947-SAB (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| SPURLEN, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| Defendants. | |
| | (ECF No. 13) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

On March 27, 2025, the Court screened Plaintiff complaint, found no cognizable claims, and granted Plaintiff the opportunity to amend the complaint. (ECF No. 12.) Plaintiff failed to file an amended complaint or otherwise communicated with the Court. Therefore, on May 6, 2026, the Court ordered Plaintiff to show why the action should not be dismissed. (ECF No. 13.) Plaintiff has failed to respond to the order to show cause and the time to do so has passed. Thus, the operative complaint before the Court is the initial complaint, which as explained below, fails

to state a cognizable claim for relief and dismissal of the action is warranted.

## II.

## SCREENING ORDER

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of

the screening requirement under 28 U.S.C. § 1915.

Due to filing multiple inmate grievances against Kern Valley State Prison's medical and mental health staff for lack or program, treatment, disrespect, Plaintiff was punished twice for the same offense and stripped of all his privileges. Plaintiff was not informed that he had a committee meeting so he was not able to prepare fully and to present witnesses and evidence. Plaintiff informed the Institution Classification Committee (ICC).

Plaintiff was not provided a staff assistant at least 24 hours prior to the hearing, and he did not meet with the assistant beforehand as required, nor did he introduce himself to Plaintiff in the hearing. Captain Perez placed Plaintiff on C-status which took away his credit earning ability, yard, dayroom, telephone, mail, canteen, and subjected him to double punishment.

In July 2019, Plaintiff was diagnosed as having "undiagnosed depressive disorder" due to having a 525 year to life sentence. Over the last three years, Plaintiff's depression has increased to the point of being "suicidal" calling for help over eight times, at least once in 2022. In 2023, between August and October, Plaintiff was suicidal requiring a 5-day follow-up.

From December 2024 to June 2025, almost every other week the Enhanced Outpatient Program ("EOP") yard went on "lockdown" restricting movement and stopping treatment. Treatment was considered to be one on one with the psychiatrist for medication and various other programs .

Even though Plaintiff was not the cause of the lockdowns, Plaintiff was forced to be restricted and deprived of his treatment because of the action of other inmates. Plaintiff was also subjected to two 30-day lockdowns due to violence at other prisons and other yards.

All of these lockdowns caused Plaintiff to self-medicate and spiral into further depression and anxiety due to being unable to get and receive treatment. The handful of times Plaintiff did speak with his clinician he expressed his depression and requested treatment. If Plaintiff refused "treatment" in the EOP-program he would be "kicked out" and downgraded to Correctional Clinical Case Management System ("CCCMS") for failing to receive treatment.

In May 2025, Plaintiff told his clinician that he was experiencing deeper thoughts of suicide due to the number and length of the lockdowns. Plaintiff asked for help and more

treatment.

In June 2025, Plaintiff requested a change of medication that went ignored.  Plaintiff also had an Interdisciplinary Treatment Team ("IDTT") in which officer Montez falsely reported that Plaintiff refused to go because of work.  Plaintiff was deprived from advocating for himself and speaking up.  His clinician was complicit because he knows Plaintiff never refused appointments.  This was a ploy by mental health to coerce with custody staff because Plaintiff submitted several inmate grievances regarding unequal treatment regarding denying EOP's the same opportunity to work on the patio where all the jobs are located.  The discrimination was only because of a staff directive to keep inmates separated and oppress the EOP population as Plaintiff spoke personally to Associate Warden Swain and Warden Horn about the issue.  Plaintiff explained to both of them separately in November and December 2024 that Title 15 says "all inmates are to be treated fairly and equally… if one inmate has access to an item all inmates in that facility shall have access."  Plaintiff explained his work hours did not affect his treatment schedule and that there is nothing that prohibits him from clocking out at work to attend his "treatment" for the day.  Both tried to argue that mental health treatment was more important than equality of inmates.  Both argued separately that because Plaintiff is considered "non-designated" and the other inmates are "sensitive needs," Plaintiff could not be around them for safety reasons.  Thereafter, Plaintiff received multiple frivolous Rules Violation Reports which he ended up "winning."  Plaintiff was issued the RVRs in order to be punished by losing his job and disqualification from "patio" jobs so he could not complain about the qualifications for those positions.

Swain told Plaintiff prior to walking away from the conversation that "you can't have both, you can't work on the patio and be in EOP."  However, after Plaintiff filed grievances then their position changed and all jobs are open to everyone.

Around March 2025, Plaintiff was hired in the library and he began being harassed by medical staff calling him to "IDTT" with an agenda to downgrade and take his EOP classification.  The clinician initially told Plaintiff that he was getting into too much trouble with RVRs and he could be voted out of EOP.  An IDTT is to only take place every 90 days, yet Plaintiff was called in March or April, May, and June.  The one IDTT that Plaintiff missed

4

(because of officer Montez's lie), Plaintiff was unknowingly stripped of EOP.

Plaintiff's clinician and the floor staff did not tell him he was dropped from EOP to CCCMS even though they all were aware because mental health provides a list immediately of those dropped from EOP. Plaintiff found out he was dropped from EOP by Sergeant Salazar the following Monday at work. Plaintiff complied with the request and moved his belongings, but he expressed his disagreement because he was never allowed to go to IDTT.

Medical mental health appointments are required to be verified by staff as being "refused"; however, nobody on Plaintiff's IDTT team verified his refusal.

In June 2025, Plaintiff again attempted suicide by overdosing on pills but did not tell his clinician because he lost trust in him when he refused to believe complaints about his childhood. The IDTT team knew by dropping Plaintiff from EOP and not raising his level of care or keeping him in EOP will cause him to receive less treatment/therapy and his issues will only compound and get worse. When Plaintiff asked for more help he was ignored by his clinician.

R. Valdivia and Montez conspired to prevent Plaintiff from attempting IDTT knowing the consequences would result in being dropped from the EOP program. R. Valdivia laughed at Plaintiff stating, "ha ha you're not EOP anymore, what are you doing here?" Both R. Valdivia and Montez did not allow Plaintiff to go to IDTT and thereby intentionally denied him treatment.

Plaintiff's IDTT team did not call Plaintiff or check to see if he wanted to attend or verify that he refused because they wanted to appease Warden Horn and Associate Warden Swain. This was done because they could not place Plaintiff on C-status while in EOP and custody wanted Plaintiff on C-status to take away his job to punish for filing inmate grievances regarding equal treatment in EOP.

In July 2025, Plaintiff was called to "ICC" without warning or time to prepare as required- a 72-hour warning is required to allow Plaintiff to prepare and gather evidence in his defense. No one identified themselves as Plaintiff's staff assistance as required which deprived him of presenting his defense at the hearing. The captain and Reves said it didn't matter because Plaintiff was eligible for C-status and was flagged because there was only 3 days left to punish him. Plaintiff argued this was double jeopardy because he was already punished for the RVRs he

received.  The captain agreed to allow Plaintiff to present witnesses, but Plaintiff advised him he was unable to present any evidence because he was not timely advised of the hearing.  When Plaintiff attempted to present evidence it was ignored.

**IV.**

**DISCUSSION**

### A.    Due Process

Plaintiff contends that he was not provided appropriate notice of the ICC hearing and was not able to fully prepare and present witnesses and evidence.  More specifically, Plaintiff contends that he was provided a staff assistance and at 24-hour notice prior to the hearing.

Plaintiff fails to state a claim because it is based on Plaintiff's classification hearing.  Prisoners do not have a right to a particular classification or custody level under the Due Process Clause. See Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (emphasizing that " 'a prisoner has no constitutional right to a particular classification status.' ") (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)). Accordingly, plaintiff does not have a liberty interest in being housed in any particular prison or to any particular classification.  Therefore, Plaintiff does not state a due process claim based on his classification hearing.

### B.    Double Punishment

To the extent Plaintiff claims that his change in classification to C-status violated the Double Jeopardy Clause, this claim would fail because the Double Jeopardy Clause does not apply to prison disciplinary proceedings.  See United States v. Brown, 59 F.3d 102, 103–04 (9th Cir. 1995) (holding that the Clause did not bar criminal charges where prisoner had already been punished in prison disciplinary proceedings with a loss of good-time credit and disciplinary transfer); Id. at 105 ("[W]ithholding of good time credit ... [does] not constitute punishment for double jeopardy purposes[.]"); United States v. Apker, 419 F.2d 388, 388 (9th Cir. 1969) (holding that segregated confinement after escape attempt did not preclude criminal prosecution for same conduct); Baldovinos v. Copenhaver, 680 F. App'x 640, 641 (9th Cir. 2017) (rejecting habeas

6

challenge to prison disciplinary proceedings) (citing Brown, 59 F.3d at 104–05); Johnson v. Coursey, 487 F. App'x 327 (9th Cir. 2012) ("[T]he prohibition against double jeopardy does not apply to prison disciplinary sanctions[.]"); Johnson v. Gomez, 161 F.3d 13 (9th Cir. 1998) (holding that the district court properly rejected a § 2254 petition because "prison disciplinary proceedings resulting in the loss of good time credits are remedial in purpose and do not constitute punishment for double jeopardy") (citing Brown, 59 F.3d at 104–05); Jacobs v. Angelone, 107 F.3d 877 (9th Cir. 1997) (unpublished) ("Double jeopardy does not apply to prison disciplinary proceedings."); Buchanan v. Marshall, 104 F.3d 365 (9th Cir. 1996) (unpublished) (same).

### C.    Mental Health Treatment

Plaintiff contends that officer Montez falsely reported that Plaintiff refused to attend an IDTT meeting which resulted in his medical classification being downgraded from EOP to CCCMC.  Plaintiff also contends that R. Valdivia and Montez conspired to prevent Plaintiff from attempting IDTT knowing the consequences would result in being dropped from the EOP program.  R. Valdivia laughed at Plaintiff stating, "ha ha you're not EOP anymore, what are you doing here?"  Both R. Valdivia and Montez did not allow Plaintiff to go to IDTT and thereby intentionally denied him treatment.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively,

the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." Id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "... unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d

8

330, 332 (9th Cir. 1996).

Here, Plaintiff has failed to present sufficient facts to support his allegations that the IDTT members were deliberately indifferent to his risk of mental health needs and suicide risk.  The mere downgrade in treatment does not support a plausible inference of deliberate indifference.  In addition, although Plaintiff claims that Defendants R. Valdivia and Montez conspired and prevented him from attending the IDTT meeting, he fails to demonstrate that his failure to attend one IDTT resulted in the lack of mental health treatment or that they had any involvement with the decision by the IDTT.  Rather, it appears Plaintiff simply disagrees with the change in his medical classification from EOP to CCCMS, which does not give rise to a claim for deliberate indifference under the Eighth Amendment.  Accordingly, Plaintiff fails to state a cognizable claim under the Eighth Amendment.

**D.     Retaliation**

Plaintiff contends that he was issued false RVRs because he complained about EOP inmates not having the same job assignment privileges as other inmates.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." Watison, 688 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct must be alleged. Id. The plaintiff must also allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Id. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional

9

goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

Here, Plaintiff has alleged he was engaged in protected conduct. See Rhodes, 408 F.3d at 568; Watison, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."). The Court also finds Plaintiff has plausibly alleged Defendants each took adverse action against him, in the form of issuing "false" RVRs." See Hines v. Gomez, 108 F.3d 265, 268–69 (9th Cir. 1997) (explaining that a false disciplinary charge against a prisoner in retaliation for filing grievances constitutes adverse action); Rhodes, 408 F.3d at 568 (finding adverse action element satisfied where officers "arbitrarily confiscated, withheld, and eventually destroyed [the plaintiff's] property").

However, retaliation is not established simply by showing adverse activity by a defendant took place after protected speech; rather, Plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (stating retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). While timing may be considered circumstantial evidence of retaliatory intent, "timing alone is insufficient" to support an inference that prison officials took an adverse action against a prisoner in retaliation because of a prisoner's participation in protected conduct. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). Here, Plaintiff simply claims he was issued RVRs after he complained about job assignments available to EOP inmates, but he does not provide facts showing any other nexus between any of these events. Such speculation of retaliatory motive is insufficient to give rise to a claim for relief. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014).

Finally, Plaintiff has also failed to plead sufficient facts to show the absence of "legitimate correctional goals," or the "chilling effect" required to state a plausible retaliation claim. Pratt, 65 F.3d at 806 (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)); see also Jenkins v. Drake, No. CV 19-5656 ODW (PVC), 2020 WL 2771999, at *9 (C.D. Cal. May 5, 2020) (dismissing retaliation claim while noting that the plaintiff continued to file grievances and threatened court action to protect his rights, and the FAC failed to make even conclusory allegations about the chilling effect of the defendants' actions). In sum, Plaintiff's allegations are

10

insufficient to state a First Amendment retaliation claim against any Defendant.

**V.**

**ORDER AND RECOMMENDATION**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 1, 2026**    _____

STANLEY A. BOONE
United States Magistrate Judge

11